# EXHIBIT B



# Jill Miller
### AND ASSOCIATES P.C.
### ATTORNEYS AT LAW

March 28, 2018

James J. Wilson, Esquire
Marshall Dennehy Warner
Coleman & Goggin
PO Box 3118
Scranton, PA 18505-3118

## RE: SCHUTZ V. AMERICAN GENERAL LIFE INS. CO.

Dear Mr. Wilson:

    I enclose a copy of the Complaint that was filed on today's date.

Sincerely,

Melissa J. Foley, Esquire

MJF/ljb
Encl.

220 Penn Avenue, Suite 301
P.O. Box 767
Scranton, Pennsylvania 18501-0767
Phone 570 341 3400   Fax 570 341 1881

Jill Miller and Associates, P.C.
By: Melissa J. Foley, Esquire
I.D. #: 84559
220 Penn Avenue, Suite 301
Scranton, PA 18503
(570) 341-3400                                                 Attorney for Plaintiff

--------------------------------------------------------------------------------

| | |
|---|---|
| Jeanine Schutz | IN THE COURT OF COMMON PLEAS |
| 2 Hillary Drive | OF LACKAWANNA COUNTY |
| White Haven, PA 18661 | |
| | |
| Plaintiff | |
| | |
| vs. | |
| | |
| American General Life Insurance Company | |
| 2727-A Allen Parkway | No.: 2015-CV-2485 |
| Houston, TX 77019 | |
| | |
| Defendant | |

## NOTICE

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

North Penn Legal Services, Inc.          PA Lawyer Referral Service
108 N. Washington Avenue                 P.O. Box 186
Scranton, PA 18503                       Harrisburg, PA 17108
(570) 342-0184                           1-800-692-7375 or 1-570-238-6715

Jill Miller and Associates, P.C.
By: Melissa J. Foley, Esquire
I.D. #: 84559
220 Penn Avenue, Suite 301
Scranton, PA 18503
(570) 341-3400

Attorney for Plaintiff

| | | |
|---|---|---|
| Jeanine Schutz, | : | IN THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY |
| Plaintiff | : | |
| vs. | : | JURY TRIAL DEMANDED |
| American General Life Insurance Company, | : | |
| Defendant | : | NO: 2015-CV-2485 |

## COMPLAINT

And now comes the Plaintiff, Jeanine Schutz, through her counsel, Jill Miller and Associates, P.C., and complains of the Defendant, American General Life Insurance Company, as follows:

1.    Plaintiff, Jeanine Schutz, is an adult and competent individual who resides at 2 Hillary Drive, White Haven, Pennsylvania 18661.

2.    Defendant, American General Life Insurance Company, ("AGLA"), is an insurance company authorized to transact insurance business in the Commonwealth of Pennsylvania and has a principal place of business at 2727-A Allen Parkway, Houston, Texas 77019.

3.    On or about January 29, 2013, Plaintiff submitted an application for disability insurance to the Defendant.

4.    On March 1, 2013, AGLA issued a policy of insurance for total disability

1

benefits, Policy No. 313750226 ("the Policy") to the Plaintiff. (The Defendant is in the exclusive possession of the Policy.)

5.    The Policy Schedule states that the available benefit for total disability is $10,000.00.

6.    The Policy defines "Elimination Period" as the "number of consecutive days shown on the Policy Schedule during which the Insured must be continuously Totally Disabled prior to being eligible for a Total Disability Benefit."

7.    The Policy provides that "NO Benefits are payable during the Elimination Period."

8.    The Policy provides that "NO Elimination Period can begin until after the Waiting Period has elapsed."

9.    The Policy defines "Incurs/Incurred" as "an event or incident that:

(a) occurs on or after the Date of Issue of this Policy; and
(b) occurs while this Policy is in force; and
(c) occurs while the Insured is in the United States; and
(d) is not excluded by a specific name or a specific description in this    Policy."

10.    The Policy defines "Pre-existing Condition" as "a condition for which medical advice or treatment was recommended by a Physician or received from a Physician within the two (2) year period prior to the Date of Issue of this Policy."

11.    The Policy defines "Satisfactory Proof" as "proof determined to be

satisfactory by Us."

12.    The Policy defines "Total Disability/Totally Disabled" as "a condition that solely as result of the Incurring of the Covered Injury while the Insured is Gainfully Employed at the Insured's Job or the Occurrence of a Covered Sickness while the Insured is Gainfully Employed at the Insured's Job, affects the Insured so that such Insured is:

> (a) continuously and totally unable to perform the Material and Substantial Duties of his or her Job in which he or she is Gainfully Employed; and
> (b) not Gainfully Employed in any Job; and
> (c) under the Regular and Appropriate Care of a Physician for treatment arising from and related to such Covered Injury or Covered Sickness; and
> (d) expected by a Physician to continue to have such Covered Injury or Covered Sickness or at least the number of consecutive days on the Policy Schedule in the column entitled Expected Duration Period for Total Disability.

13.    The Policy states:

**NOTICE OF CLAIM**

You must provide to Us written notice of loss within sixty (60) days after a Covered Loss is Incurred or as soon thereafter as possible,

14.    The Policy provides:

**CLAIM FORMS**

When We receive Your notice, We will send You forms for

filing proof of loss.

\* \* \*

**...You must provide to Us any authorizations necessary to obtain medical or other records to verify Total Disability.**

\* \* \*

## TIME OF PAYMENT OF CLAIMS

Immediately upon proof of loss, We will pay Benefits.

\* \* \*

## PHYSICAL EXAMINATION

At Our expense, We can require physical examination of the Insured by a Physician of Our choice in the United States while a claim is pending or when You are required to provide proof of Total Disability.

\* \* \*

We reserve the right to request that a Physician of Our choice review any finding of Total Disability in the event of a dispute or disagreement regarding the appropriateness or accuracy of such finding. We reserve the right to require that the Insured submit to an examination to confirm a disputed finding of Total Disability. We reserve the right to request that an independent and acknowledged expert in the applicable field of medicine review the evidence used in making any disputed finding. We will pay for any such requested examination or review.

4

15.     The Plaintiff commenced treatment with Dr. John A. Lynott in July 2013.

16.     Dr. Lynott's impressions were left calcaneal varus and left calcaneal tuberosity varus secondary to likely fracture.

17.     By letter dated August 29, 2013, Defendant acknowledged receipt of Plaintiff's claim and requested that the Plaintiff sign a medical authorization and provide the name, address and telephone number of her primary care physician.

18.     On or about September 3, 2013, the Plaintiff returned the signed medical authorizations to the Defendant.

19.     By letter dated October 25, 2013, Defendant acknowledged receipt of the Plaintiff's claim and requested the address and phone number of Dr. Overley.

20.     Plaintiff promptly provided Defendant with Dr. Overley's address and telephone number.

21.     By letter dated December 16, 2013, Defendant requested that Plaintiff complete a Claimant/Insured Questionnaire, which Plaintiff promptly completed and returned.

22.     On or about December 31, 2013, Plaintiff's surgeon, Dr. John A. Lynott, faxed a Standard Disability Compensation/Reimbursement/Claim Form to Defendant, stating that Plaintiff's diagnosis and concurrent condition is "left foot calcaneus

fracture with varus malunion" with a surgery date of August 28, 2013.

23. On or about December 31, 2013, Plaintiff submitted a Statement for Disability Benefits to Defendant, indicating that she sustained an accident resulting in a foot injury when she was hiking and slipped on a rock at Hickory State Park on March 15, 2013. She further indicated that she first sought treatment on July 22, 2013, and first became disabled on August 26, 2013, and that she returned to full time duties on December 20, 2013.

24. On or about February 3, 2014, Jean Cox, an agent or employee of Defendant, authored a memorandum to Nathaniel Robinson, M.D., with a "Reason for referring in detail: to see if meets duration period...other comments: please review. Does the insured meet the duration period?"

25. By letter dated February 14, 2014, Defendant acknowledged receipt of Plaintiff's claim and cited the following exclusion:

> We will not pay any Benefits for any Accidental Injury or Sickness caused in or in part by, or resulting in whole or in part from:
> (p) Accidental Injury Incurred or a Sickness that occurs prior to the Date of Issue of the Policy that is aggravated by any event that occurs after the Date of Issue of this Policy.
>
> * * *
>
> The medical records were obtained and reviewed. According to these records you underwent a left lower

6

extremity open gastrocnemius recession for treatment of chronic Achilles tendonitis on December 17, 2012. The effective date of your policy is January 29, 2013, and the date of issue is March 1, 2013. Since your treatment was prior to the effective date of the policy no benefits are due at this time.

26.     On or about December 17, 2012, Dr. Benjamin Overley performed a left lower extremity open gastrocnemius recession for chronic Achilles tendonitis of the left lower extremity.

27.     On or about February 22, 2012, Dr. Overley received an MRI of the left ankle, which was consistent with left Achilles tendinosis.

28.     In an office note dated January 21, 2013, Dr. Overley noted that the Plaintiff was status post-gastrocnemius recession for chronic Achilles tendonitis of her left ankle and reported that the Plaintiff was doing great, was able to walk fine, and he discharged her at that time.

29.     None of Dr. Overley's notes, records, or report, refer to any injuries or symptoms to the left foot calcaneus fracture with varus malunion.

30.     By letter dated October 7, 2014, sent by certified mail, counsel for Plaintiff informed Defendant that she had been retained to represent Plaintiff with respect to the denial of her claim for benefits and requested "each and every document in your possession which supports your denial. According to your letter,

the claim was denied due to a prior history of Achilles tendinitis. Dr. Lynott, Ms. Schutz's orthopedic surgeon, disabled her for a period of approximately 4 months following a calcaneal osteotomy for calcaneal fracture. Unless you have medical evidence relating the calcaneal fracture to the Achilles tendinitis, I expect that you will reverse your decision immediately...In the event you will not reverse your decision, please provide me with the information requested above. I enclose an authorization signed by my client directing you to release the information to me. I look forward to your prompt response."

31.  By letter dated October 15, 2014, the Defendant advised counsel for Plaintiff that it required a signed authorization in order to release information pertaining to the Plaintiff.

32.  By letter dated December 9, 2014, counsel for Plaintiff returned the authorization and again requested the information requested in the letter of October 7, 2014.

33.  By letter dated February 20, 2015, sent by certified mail, counsel for the Plaintiff requested the information requested by letter on October 7, 2014, December 9, 2014, and February 4, 2015.

34.  On or about February 10, 2013, Dr. Nathaniel Robinson authored a memorandum regarding the Plaintiff which states in relevant part:

...The insured stated that she sought treatment on 7/22/13. On 12/17/2012, the insured underwent a left lower extremity open gastrocnemius recession for treatment of chronic Achilles tendonitis. On 7/22/13, the insured was noted to have had multiple surgeries on her left heel and continued to experience left lateral heel pain. The insured ambulated with a slight antalgia. The impression was left heel hindfoot verwus (sic) sequela of hindfoot versus ununited fracture. X-rays showed no acuite (sic) fracture. There was a large plantar calcaneal spur. On 8/5/2013, the insured requested surgery for a recommended calcaneal osteotomy. Surgery was performed on 8/28/2013. Dr. Lynott stated the insured could return full time to work on 12/20/2013. Comments: could not locate medical records after 7/22/2013. Conclusion: the insured sought medical treatment on 7/22/2013 for her left foot. There is not mention of a left foot injury on 3/15/2013. The insured had surgeries on her left foot before the policies were issued. The medical records on 7/22/2013 show a continuation of left foot problems that started before the policy issue date. The insured appears to fit into exclusion (p).

35.   Dr. Nathaniel Robinson is not an orthopedic surgeon.

36.   Dr. Nathaniel Robinson is a urologist.

37.   At all times relevant to this action, Dr. Nathaniel Robinson was employed as the Assistant Medical Director for the Defendant.

38.   In the memorandum directed to Dr. Nathaniel Robinson, he was asked to determine whether or not the Plaintiff satisfied the "duration period" a term not even used in the Policy.

39.   Nothing in the records provided to the Plaintiff indicates what

information was provided to Dr. Robinson.

40.   The only medical record referenced by Dr. Robinson is the office note of Dr. Lynott dated 7/22/13.

41.   Dr. Robinson's conclusion refers to all of the ligaments, tendons, and bones of the lower leg and foot collectively as the "left foot".

42.   Upon the illogical and incredible memorandum from Dr. Robinson, Defendant immediately denied the Plaintiff's benefits without any coherent explanation for its decision, thereby denying her access to the information on which it relied in denying her claim and, therefore, the opportunity to address it.

43.   On April 7, 2015, the Plaintiff filed a Writ of Summons against the Defendant.

44.   On June 16, 2015, Defendant served responses to Plaintiff's pre-Complaint Request for Production of Documents including what it purports to be its entire file pertaining to the Plaintiff.

45.   In October 2015, Defendant mailed counsel for Plaintiff a check for the total disability benefit in the amount of $10,000.00 with no explanation of why it reversed its decision.

46.   On February 16, 2016, Defendant provided counsel for Plaintiff with a letter from Dr. Lynott dated September 17, 2015, which was solicited by Defendant.

47.  The letter dated September 17, 2015, states in relevant part:

We were requested to comment on whether the condition for which Ms. Schutz underwent a calcaneal osteotomy on August 28 was caused by any event that occurred after March 1, 2013, that aggravated the Achilles tendonitis, for which Ms. Schutz received treatment by another physician before policy 3137500226 was issued. I do not believe so. I think the condition for which Ms. Schutz underwent a calcaneal osteotomy, was likely the calcaneal fracture, or a more chronic condition, but I do not have premorbid x-rays to determine which. However, it does not seem that the calcaneal osteotomy, which I performed on her, was performed for any Achilles tendonitis aggravation secondary to the open gastrocnemius recession and chronic Achilles tendonitis done in 2012.

## COUNT I
## BAD FAITH 42 PA C.S.A. §8371

48.  Plaintiff incorporates by reference paragraphs 1 through 47 as if they were set forth here at length.

49.  At all times relevant hereto, Plaintiff cooperated with and provided whatever information Defendant requested which clearly establish that she was entitled to benefits under the Policy.

50.  The actions and inactions of the Defendant constitute bad faith according to 42 PA C.S.A. §8371 as follows:

    (a)  Failing to investigate Plaintiff's claim after reasonable notice that its denial of benefits was erroneous;
    (b)  Subordinating the interests of its insured to its own financial

11

          interests;

(c)    Failing to continue to offer payment to Plaintiff;

(d)    Failing objectively and fairly to evaluate Plaintiff's claim;

(e)    Ignoring the medical records and reports of Plaintiff's treating physicians

(g)    Requiring Plaintiff to institute litigation to recover amounts due under the policy;

(h)    Misrepresenting the coverage of the policy and extent of coverage

(i)    Misrepresenting important facts of policy or contract provisions related to coverages at issue;

(j)    Failing to acknowledge and act promptly upon written communications;

(k)    Refusing to pay Plaintiff's claim without conducting a reasonable investigation based upon all of the information available;

(l)    Failing in good faith to effect a prompt, fair and equitable settlement of Plaintiff's claim in which the Defendant's liability has become reasonably clear;

(m)    Failing to adopt or implement reasonable standards for the prompt investigation of Plaintiff's claim;

(n)    Failing to affirm coverage of Plaintiff's claim within a reasonable time after proof of Plaintiff's loss was completed and communicated to Defendant or its representative;

(o)    Relying on incompetent medical reports;

(p)    Soliciting biased medical opinions;

(q)    Soliciting unqualified medical opinions; and

(r)    Relying on unqualified medical opinions.

51.    As a result of the actions and inactions of the Defendant, the Plaintiff sustained financial losses and harm.

52.    The Defendant's decision to delay payment of Plaintiff's disability benefit lacked any reasonable basis and Defendant knew or recklessly disregarded that it lacked a reasonable basis to delay payment of Plaintiff's disability benefit.

53.    The Defendant's course of conduct as described above is so outrageous and unreasonable as to warrant the imposition of punitive damages to punish it for its outrageous conduct and to deter such further conduct, a claim for which is made.

WHEREFORE, Plaintiff, Jeanine Schutz, demands judgment against Defendant, American General Life Insurance Company, and in her favor in an amount in excess of Fifty thousand ($50,000.00), together with compensatory damages, punitive damages, interest, cost of suit, attorney's fee and further damages allowed by 42 Pa. C.S.A. §8371.

Attorneys for Plaintiffs

By: _____
Melissa J. Foley, Esquire
Jill Miller and Associates, P.C.
P.O. Box 767
Scranton, PA 18501-0767
(570) 341-3400

13

## **VERIFICATION**

I Melissa J. Foley, Esquire make this verification and state that the averments contained herein are true and correct to the best of my knowledge information and belief. The allegations contained in this Complaint are based upon information provided to me by my client and from the Defendant in pre-complaint discovery. This verification is made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

Melissa J. Foley, Esquire

**Jill Miller and Associates, P.C.**
By: Melissa J. Foley, Esquire
I.D. #: 84559
220 Penn Avenue, Suite 301
Scranton, PA 18503
(570) 341-3400                                        Attorney for Plaintiff

---

Jeanine Schutz                          :    IN THE COURT OF COMMON PLEAS
2 Hillary Drive                         :         OF LACKAWANNA COUNTY
White Haven, PA 18661                   :
                                        :
          Plaintiff                     :
                                        :
     vs.                                :
                                        :
American General Life Insurance Company :
2727-A Allen Parkway                    :         No.: 2015-CV-2485
Houston, TX 77019                       :
                                        :
          Defendant                     :

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of

the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial

Courts that require filing confidential information and documents differently than non-

confidential information and documents.

Melissa J. Foley, Esquire
Attorney for Plaintiff

**Jill Miller and Associates, P.C.**
By: Melissa J. Foley, Esquire
I.D. #: 84559
220 Penn Avenue, Suite 301
Scranton, PA 18503
(570) 341-3400

Attorney for Plaintiff

--------------------------------------------------------------------------------

| | |
|---|---|
| Jeanine Schutz<br>2 Hillary Drive<br>White Haven, PA 18661 | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
| Plaintiff | |
| vs. | |
| American General Life Insurance Company<br>2727-A Allen Parkway<br>Houston, TX 77019 | No.: 2015-CV-2485 |
| Defendant | |

## CERTIFICATE OF SERVICE

I, Melissa J. Foley, Esquire, certify that I have served Plaintiff's Complaint on the via first class mail, postage prepaid, on the 28th day of March 2018 upon the following counsel of record:

James J. Wilson, Esquire
Marshall Dennehy Warner
Coleman & Goggin
PO Box 3118
Scranton, PA 18505-3118

Melissa J. Foley, Esquire
Attorney for Plaintiff

# EXHIBIT C

Finding an Insurance Company Results

TOM WOLF, GOVERNOR( HTTP://WWW.GOVERNOR.PA.GOV/ )

|
JESSICA K. ALTMAN, COMMISSIONER( HTTP://WWW.INSURANCE.PA.GOV/PAGES/MEETTHECOMMISSIONER.ASPX )

Page Content

AMERICAN GENERAL LIFE INSURANCE COMPANY

**NAIC:** 60488

**Home Address**
2727-A ALLEN PARKWAY
HOUSTON, TX 77019

**Mailing Address**
P. O. BOX 1591
HOUSTON, TX 77251

**Domicile:** TX

**Ph:** 800-231-3655

**Type:** Life

**Powers:**
Accident and Health, Life and Annuities, Separate Account (Variable Annuities), Separate Account (Variable Life)

Consumer Information

Financial Examination Reports
( http://www.insurance.pa.gov/Companies/IndustryActivity/FinancialExaminations/Pages/default.aspx?
Paged=TRUE&p_SortBehavior=0&p_FileLeafRef=A )

Market Conduct Examination Reports( http://www.insurance.pa.gov/Regulations/Regulatory%
20Actions/Pages/CurrentMarketConduct.aspx )

These links do not imply that an examination report is present with this record. It is merely here to promote yet another service
on this website.

Go Back to Previous Page

Company Information is current as of: 4/9/2018

## CERTIFICATE OF SERVICE

I, William J. McPartland, Esquire, do hereby certify that a true and correct copy of the foregoing Notice of Removal was served upon all parties by first class mail and electronic mail on the 17th day of April, 2018 at the following addresses:

Melissa Foley, Esquire
Jill Miller and Associates, P.C.
220 Penn Avenue, Suite 301
Scranton, PA 18503

MARSHALL  DENNEHEY
WARNER COLEMAN & GOGGIN

By:_____
William J. McPartland, Esquire
Attorney I.D. No:  PA 94214
Meghan M. Carey, Esquire
Attorney I.D. No: PA 321069
P.O. Box 3118
Scranton, PA  18505-3118
(570) 496-4600